Weekes *vs.* Cottingham.

WILLIAM J. WEEKES, plaintiff in error, *vs.* CAROLINE COT-
TINGHAM, defendant in error.

1. In a civil action for a homicide, the plaintiff need not prove any
   criminal prosecution for the act as a felony, if the defendant's plea
   admits it.   The failure to allege it in the declaration is amendable.
2. For the unlawful, wilful homicide of a husband, whether it be mur-
   der or only voluntary manslaughter, his widow may recover dama-
   ges.   If committed in resisting a battery, and the deceased was the
   assailant, these facts, with the attendant circumstances, will go in
   mitigation of the amount.
3. What is admitted at the trial, in open court, and what is contended
   for, may be stated in charging the jury.   That admissions and po-
   sitions mentioned in the charge were of this public character, and
   correctly recited, will be presumed, if nothing to the contrary ap-
   pears.
4. The verdict is not unwarranted by the evidence.

Husband and Wife.   Torts.   Pleadings.   Charge of Court.
Before Judge CRAWFORD.   Talbot Superior Court.   Septem-
ber Term, 1876.

Mrs. Cottingham brought trespass against Weekes for
$10,000.00 damages, alleged to have resulted from the un-
lawful killing of her husband, James D. Cottingham.   The
declaration did not aver any prosecution for the criminal
offense.

The defendant pleaded as follows:

1. The general issue.

2. That in the killing of said Cottingham he acted in
self-defense.

3. That he had been tried for the offense of manslaugh-
ter, on account of said homicide, by the superior court of
Talbot county, and acquitted.

The evidence showed the following facts:

That Weekes and Cottingham, the husband of plaintiff,
became involved in a personal difficulty in reference to a
note which the former, as one of the trustees of the Metho-
dist church, held on the latter, who was also a trustee.

Weekes remarked that he would not take a new note for the old one, as it would not renew the debt. Cottingham replied that the trustees would act upon that matter. Weekes stated that he was one of the trustees, and would not consent. Cottingham replied in a loud and angry tone, "Sue, sue, I don't care." Weekes said he would suppose he did not care from the way he was disposed to settle his debts. Cottingham replied, "I pay my debts as well as you do." To this Weekes answered, according to the evidence for the plaintiff, by a flat denial "it is not so;" according to his own evidence, by the remark, "I do not think you do." Cottingham raised a stick which he held in his hand. Weekes said, "If you strike me in my own house, I will cut you," drawing his knife. The testimony for the plaintiff showed that he said, "I will cut your throat, you infernal scoundrel." Cottingham replied, "Cut away," striking at him with his stick and seizing him by his throat, pressing him back against and over a counter, or table. Cottingham probably struck him with the stick, though upon this point the evidence is not clear. Weekes was somewhat bruised in the rencounter, but not seriously hurt. Whilst he was pressed back, as above described, or whilst Cottingham was being pulled off of him, or was getting up of his own accord, he cut him (Cottingham) in the right side of the neck, from which wound the latter shortly thereafter died. Cottingham was a much larger and more powerful man than Weekes. The difficulty happened in Weekes' store.

Evidence as to the damage sustained by plaintiff by reason of the homicide, was introduced.

The jury found for the plaintiff $2,400.00. The defendant moved for a new trial upon the following grounds:

1. Because the court erred in charging as follows: "It is not disputed that the defendant committed the homicide, but it is claimed by the plaintiff, that it was done unlawfully, and, by the defendant, that he was justified in the act, because it was done in self-defense. This makes the issue. To

determine whether the killing was unlawful, you must ascertain from the testimony what was done by the parties at the time of the homicide : that is, what each one did; for each one had the right to do what the law allowed him to do, and nothing more. Did Weekes, at the time of the difficulty, use any language, opprobious in its character to Cottingham which would warrant an assault and battery ? If he did, then the assault and battery may be justified in law; but the battery must not exceed the provocation. Now, then, suppose that you should believe that each one of the parties, at the beginning of the rencounter, did nothing more than use opprobrious words on the one side, and a battery on the other, not exceeding that which you would say was justified, then you must ascertain what followed next. Plaintiff claims, that after the battery was over, and the deceased had left, or as he was in the act of leaving, that then defendant struck the fatal blow; whilst, on the other hand, the defendant insists that the deceased had the defendant down on his back, was upon him, with his hand upon his throat, and choking to such a degree that he would soon have killed him, if he had not used his knife upon him, which use was necessary to save his own life, and that the fatal blow was struck in self-defense. In other words, that his act was nothing more than justifiable homicide. To determine that question, you must understand what constitutes justifiable homicide." The court here read §§4330 and 4331 of the Code, and said : " If the defendant was authorized, under the law, to do the act complained of, then he may claim that as his justification ; otherwise, he cannot."

2. Because the court erred in refusing to charge, without qualification, as follows: " If the jury believe, from the evidence, that defendant killed plaintiff's husband, and if the evidence shows, to the satisfaction of the jury, that Cottingham was a wrong-doer himself, and, as such wrong-doer, contributed to the injury he sustained, which caused his death; and, by his illegal conduct, brought about the difficulty, then the plaintiff is not entitled to recover."

And in qualifying such request, as follows: "The jury must take into consideration his conduct, and say whether he was to blame in his conduct; and, although the defendant may not be justified (and you should find also that he was a wrong-doer), then you may say how much the damages should be lessened by reason of such conduct of the deceased."

3. Because the plaintiff failed to allege that she had prosecuted defendant, or that he was prosecuted, or to aver any good excuse for such failure.

4. Because the verdict was contrary to the law and the evidence.

The motion was overruled, and the defendant excepted.

This is the third time this case has been before this court —see 54 *Ga.*, 275; 56 *Ga.*, 201.

BLANDFORD & GARRARD; J. M. MATTHEWS; WILLIS & WILLIS, for plaintiff in error.

W. A. LITTLE; PEABODY & BRANNON, for defendant.

BLECKLEY, Judge.

1. When the action is by a widow for the homicide of her husband, the failure to allege a prosecution for the homicide as a crime is amendable; and if one of the defendant's pleas, found in the record, admit the prosecution, there is no occasion for the plaintiff to prove it.

2. If in resisting a battery, the assailant be wilfully slain, his widow may recover damages, unless the homicide is justifiable. If it amount either to murder or voluntary manslaughter, it is a cause of action. The aggressive conduct of the deceased, and his unlawful violence, will go in mitigation of damages.

3. In charging the jury, the judge may state what either party admits or contends for; and the statement, when insisted upon as error, will be taken to refer to what transpired

at the trial in open court, and to be true, unless it be otherwise represented in the bill of exceptions—56 *Ga.*, 365.

4. The verdict is warranted by the evidence, as well in respect to the plaintiff's being the widow of the deceased, as to all other material matters.

Judgment affirmed.